IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SALLIE MAE CARMICHAEL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 08-G-1741-S |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

**MEMORANDUM OPINION**

The plaintiff, Sallie Mae Carmichael, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying her application for Social Security benefits. Plaintiff timely pursued and exhausted her administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. §405(g).

**STANDARD OF REVIEW**

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). To that end this court "must scrutinize the record as a whole to determine if the decision reached

is reasonable and supported by substantial evidence." Bloodsworth, at 1239 (citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth, at 1239.

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish his entitlement for a period of disability, a claimant must be disabled. The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I). For the purposes of establishing entitlement to disability benefits, physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R.§ 404.1520(a)-(f). The Commissioner must determine in sequence:

(1)     whether the claimant is currently employed;

(2)     whether she has a severe impairment;

(3)     whether her impairment meets or equals one listed by the Secretary;

(4)     whether the claimant can perform her past work; and

    (5)    whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir.1993); accord McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986).  "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment.  If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job."  Pope at 477; accord Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).  The Commissioner further bears the burden of showing that such work exists in the national economy in significant numbers.  Id.

    In the instant case,  ALJ Cynthia W. Brown determined the plaintiff met the first two tests, but concluded that while the plaintiff's history of right and left carpal tunnel release surgery and major depressive disorder are "severe" in combination, they did not meet or medically equal a listed impairment.  [R. 15].  The ALJ found the plaintiff unable to perform her past relevant work.  Once it is determined that the plaintiff cannot return to his prior work, "the burden shifts to the [Commissioner] to show other work the claimant can do."  Foote, at 1559.

## WHEN ADDITIONAL EVIDENCE IS SUBMITTED
## TO THE APPEALS COUNCIL

    Claimants are permitted to submit new evidence at each step of the review process, 20 C.F.R. § 404.900(b)("In each step of the review process, you may present any information you feel is helpful to your case.  [W]e will consider at each step of the review

process any information you present as well as all the information in our records."). The Appeals Council is required to consider the entire record, "including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. § 404.970(b); Keeton v. Department of Health and Human Services, 21 F.3d 1064, 1066 (11th Cir. 1994).

To be material the proffered evidence must be "relevant and probative so that there is a reasonable possibility that it would change the administrative result." Caulder, at 877. A review of the evidence submitted to the Appeals Council demonstrates that it meets all of the requirements of the regulations for consideration by the Appeals Council. Because the Appeals Council actually considered the evidence, the court will only review whether the Appeals Council committed reversible error in refusing to review the plaintiff's case in light of that evidence. The Regulations require the Appeals council to "review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record." 20 C.F.R. § 404.970(b).

Moreover, a "district court must consider evidence not submitted to the administrative law judge but considered by the Appeals Council when the court reviews the Commissioner's final decision denying Social Security benefits." Ingram v. Astrue, 496 F.3d 1253, 1258 (11th Cir. 2007). "[W]hen a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." Ingram at 1262.

> In <u>Bowen v. Heckler</u>, the claimant filed evidence in the Appeals Council, which considered the evidence but denied review. 748 F.2d 629 (11th Cir. 1984). We held that "the Appeals Council did not adequately evaluate the additional evidence" and, citing earlier precedents, reasoned that "[w]e have previously been unable to hold that the Secretary's findings were supported by substantial evidence under circumstances such as these." <u>Id.</u> at 634. . . . After quoting sentence four of section 405(g) in full and discussing it at length, we concluded that a reversal of the final decision of the Commissioner was appropriate. We held that "the Appeals Council should have awarded Bowen disability insurance benefits," and we remanded to the district court "for entry of an order . . . that such an award be made." <u>Id.</u> at 637.

<u>Ingram</u> at 1263.

## DISCUSSION

The plaintiff claims disability under Listing 12.05C. Listing 12.05C requires that the claimant have "A valid verbal, performance, or full-scale I.Q. of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function." <u>Davis v. Shalala</u>, 985 F.2d 528, 531 (11th Cir. 1993)(quoting Listing 12.05C). When considering whether the plaintiff has a physical or mental impairment imposing significant work-related limitation of function in addition to a low verbal scale I.Q., the Commissioner must consider the plaintiff's impairments in combination. <u>Davis</u> 985 F.2d at 533. The issue of what constitutes "a physical or other mental impairment imposing additional and significant work-related limitation of function" was addressed in <u>Edwards by Edwards v. Heckler</u>:

> An impairment imposes significant limitations when its effect on a claimant's ability to perform "basic work activities" is more than slight or minimal. The question under Listing 12.05C, however, is not whether the impairment is in and of itself disabling, thus, "significant" requires

5

> something less than severe within the meaning of § 404.1520(c) [of the Commissioner's Regulations].

755 F.2d 1513, 1515 (11th Cir. 1985)(considering whether the presence of chronic obstructive lung disease and exercise induced asthma provided a sufficient additional impairment to meet the second prong of Listing 12.05C.). The second part of the Listing, therefore, imposes a less stringent requirement than that imposed by 20 C.F.R. § 404.1520(c). Section 404.1520 sets forth the five-step sequential process by which a claimant's disability is evaluated. Section 404.1520(c) defines "severe impairment" to require that the impairment or combination of impairments significantly limit the claimant's physical or mental ability to do basic work activities.

In addition to a valid I.Q. score meeting the requirements of Listing 12.05C, a plaintiff must also satisfy the diagnostic description in the introductory paragraph of Listing 12.05C. Listing 12.00A ("If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the listing.") The introductory paragraph to Listing 12.05C is as follows:

> Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22. The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

Therefore, a claimant must have manifested "significantly subaverage general intellectual functioning with deficits in adaptive functioning" prior to the age of 22 in order to meet

Listing 12.05C.  In this circuit, it is presumed that a persons I.Q. remains fairly constant throughout his life and a valid I.Q. test meeting the Listing criteria creates a rebuttable presumption that the condition manifested itself before age twenty-two.  Hodges v. Barnhart, 276 F.3d 1265, 1268-69  (11th Cir. 2001).  The Hodges court recognized that although this circuit had not formally recognized this presumption, it had been implicitly recognized in Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992), that when a claimant presents a valid I.Q. score meeting the Listing criteria, he is presumptively disabled under the Listing if the other requirements of the Listing have been met.  Hodges, 276 F.3d at 1269.

       The ALJ noted that the plaintiff was tested for intelligence in 1987, when she was in the seventh grade.  [R. 16].  Those composite scores were as follows:

| Verbal | Performance | Full Scale |
|--------|-------------|------------|
| 73     | 71          | 70         |

[Id.].  On February 23, 2005, Christina Sparks, Ph.D., the Commissioner's consulting psychologist, conducted a Wechsler Adult Intelligence Scale Third Edition (WAIS-III), which rendered the following results:

| Verbal | Performance | Full Scale |
|--------|-------------|------------|
| 64     | 60          | 59         |

[R. 249].   In her narrative report, Dr. Sparks stated:

> Ms. Carmichael was administered the Wechsler Adult Intelligence
> Scale–Third Edition (WAIS-III) as a measure of her intellectual abilities.
> Based on behavioral observations described above, these test results are

7

> considered to be of questionable reliability and validity; they are likely an underestimate of her true functional level. Ms. Carmichael's effort was variable and she gave up quickly despite encouragement to attempt items even if she was unsure. On the WAIS-III, Ms. Carmichael received a Verbal Scale IQ score of 64, a Performance Scale IQ score of 60, and a Full Scale IQ score of 59. This is believed to be an underestimate of her true abilities. Ms. Carmichael's records report a WISC-R IQ score of 70 during a 1987 testing. Her Verbal Scale score at that time was 73 and her Performance Scale score was 71. This placed her in the low average range of intellectual functioning and seems more consistent with her reports of educational and occupational history.

[R. 249]. Dr. Sparks diagnosed Rule out Psychotic Disorder NOS, Rule out Malingering, Depressive Disorder NOS, Anxiety Disorder NOS, and Rule out Mild Mental Retardation. [Id.]. She assigned a GAF of 45. [Id.].

"Cognitively, it is likely that Ms. Carmichael is functioning in the extremely low to borderline range of intellectual functioning and current testing underestimates her ability," Dr. Sparks wrote. "Per her records she performed at higher levels historically. Lifelong lower level function intellectual [sic] levels but not mental retardation is likely." [R. 250]. The ALJ recognized "Dr. Sparks' opinion that the claimant was possibly malingering." [R. 16]. Accordingly, she rejected mental retardation as a severe impairment. [Id.]. This conclusion is not supported by substantial evidence.

At the ALJ hearing, the plaintiff's attorney argued that the plaintiff met the 12.05C listing. [R. 57-58]. ALJ Brown replied, "But the issue – Actually, Judge Lawson dealt with the issue of mental retardation in the first hearing [previous application] and, I mean, the scores that we have in this case at 3F, Dr. Sparks says here, questionable reliability, and she estimated the IQ to be more towards the low average than mental

retardation. So 12.05C wouldn't come into play." [R. 58]. The plaintiff's attorney stated that the plaintiff would be retested, and the ALJ held the record open for that examination. [R. 59]. In brief, the plaintiff argues:

> Unfortunately, the examination and report conducted by Dr. Anderson did not make it to the ALJ before she rendered her decision (although the ALJ stated at the hearing she was giving Plaintiff's attorney additional time to get such a report [R. 59], she apparently decided to render the decision without the report.

[Pl's brief at 6]. The ALJ hearing was held June 12, 2007, and the opinion was issued February 12, 2008. On February 29, 2008, Gerald K. Anderson, Ph.D., performed a psychological evaluation at the behest of the plaintiff.

> Dr. Anderson found:
>
> On this administration of the WAIS-III, Mrs. Carmichael obtained a Full Scale IQ score of 66, Verbal IQ score of 66, and Performance IQ score of 73, which places her in the mild range of mental retardation as compared to her peers. Her Verbal IQ score of 66 also falls at the 1st percentile rank while her Performance IQ score of 73 falls at the 4th percentile rank. The 7-point difference between her Verbal and Performance IQ scores is not significant. Mrs. Carmichael obtained a Verbal Comprehension Index score of 67, which falls at the 1st percentile rank as compared to her peers.
>
> Mrs. Carmichael's performance on the present testing seems consistent with her history of previous performances as mentioned in Dr. Spark's [sic] report.

[R. 302-303]. Among Dr. Anderson's diagnoses were Agoraphobia without History of Panic Disorder, Posttraumatic Stress Disorder, Adjustment Disorder with Mixed Depression and Anxiety, Dysthymia, Moderate, Cyclothymic Disorder, Rule Out Bipolar II Affective Disorder, Panic Disorder without Agoraphobia, Generalized Anxiety

9

Disorder, and Depersonalization Disorder. [R. 304]. He also diagnosed Mild Mental Retardation. [Id.]. He assigned her current GAF at 37[1]. [Id.].

As for confidence in the testing, Dr. Anderson stated that, "Mrs. Carmichael's motivation and cooperation with the examination process was good, and her statements are likely reliable within the limits of her intellectual endowment. Mrs. Carmichael is likely to have marked impairments in understanding, carrying out, and remembering instructions, and extreme impairments in her ability to deal with supervision, coworkers, and work pressures in a work setting." [R. 304-305].

Although reversal of this case is warranted, remand would also be proper because of the existence of this new and material evidence. The plaintiff submitted Dr. Anderson's report to the Appeals Council, which issued a boilerplate denial. Plaintiff's attorney has requested in the alternative that this action be remanded for proper consideration of that evidence.

The report of Dr. Anderson, which the ALJ did not have the benefit of reviewing, indicated that the plaintiff has a valid Full Scale IQ of 66. [R. 302]. As stated by Dr. Anderson, the plaintiff's performance on his testing was consistent with the results

---

[1] The Global Assessment of Functioning (GAF) Scale is used to report an individual's overall level of functioning. Diagnostic and Statistical Manual of Mental Disorders 32 (4th Edition, Text Revision) ("DSM-IV-TR"). A rating of 31-40 reflects: "**Some impairment in reality testing or communication** (e.g., speech is at times illogical, obscure, or irrelevant) **OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood** (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school)." DSM-IV-TR at 34 (emphasis in original).

obtained from Dr. Sparks's testing. [R. 303]. The court notes that Dr. Anderson's testing is also consistent with the results from when the plaintiff was tested in seventh grade. If credited, the report and opinion of Dr. Anderson would mean the plaintiff meets Listing 12.05C because the plaintiff has a valid Full Scale IQ of 66, and has a physical or other mental impairment imposing an additional significant work-related limitation of function. "[W]hen a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether the new evidence renders the denial of benefits erroneous." Ingram at 1262. The Appeals Council committed reversible error in failing to either review the plaintiff's case or to remand it for further proceedings.

## CONCLUSION

Therefore, the plaintiff is disabled within the meaning of the Social Security Act. An appropriate order remanding the action with instructions that the plaintiff be awarded the benefits claimed will be entered contemporaneously herewith.

DONE and ORDERED 20 August 2009.

UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.